IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JORGE BARROSO HERRANS,
MADELEINE O. ROSARIO FARRULLA,

Debtors-Appellants

v.

WIGBERTO LUGO MENDER,

Trustee-Appellee

CASE NO. 06-1072 (JAG)

CHAPTER 7

BANKRUPTCY NO. 99-11662

<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

This matter comes before the court pursuant to an appeal taken from an opinion and order of the United States Bankruptcy Court for the District of Puerto Rico, Honorable Sara de Jesús, dated October 17, 2005, related to certain contested matters between Debtors and the Chapter 7 Trustee. (Case No. 99-11662.) (Bankruptcy Court Docket No. 182.) A notice of appeal along with a statement of election to have appeal heard by the district court and an amended designation of content of record on appeal were transmitted to this court on January 19, 2006. (Docket No. 1.) The court's jurisdiction is premised on 28 U.S.C. § 158(a)(1). This appeal was referred to me for a report and recommendation on May 4, 2006. (Docket No. 24.) Having considered the arguments of the parties, the evidence in the record and for the reasons set forth below, it is my recommendation that the decision of the Bankruptcy Court be affirmed.

CIVIL 06-1072 (JAG)                    2

## I. FACTUAL AND PROCEDURAL BACKGROUND:

The following undisputed facts are taken from the opinion and order of the Bankruptcy Court and from the evidence on record. (Bankruptcy Court Docket No. 182.)

1.  Jorge Barroso and Madeleine O. Rosario (hereinafter "Debtors") were the sole shareholders of Power-tronics, Inc. This corporation was dissolved on August 24, 1999. (Bankruptcy Court Docket No. 122, app. 3.)

2.  On August 30, 1999, Power-tronics, Inc., Jorge Barroso, Madeleine O. Rosario and their conjugal partnership filed two complaints against the Puerto Rico Aqueduct and Sewer Authority (hereinafter "PRASA") for two projects located at Punta Santiago (KAC 99-1225) and Aguas Claras (KAC 99-1226) in the Puerto Rico Court of First Instance (San Juan Part). (Docket Nos. 27-3, at 13; 27-4, at 18.)

3.  Both complaints comprised three causes of action: (1) breach of contractual obligations and corporate damages, (2) personal damages of Debtors for their economical loss and financial distress and (3) accounts receivable of Power-tronics. Debtors claimed $2,581,998.40 for Punta Santiago and $1,773,170 for Aguas Claras. (Docket Nos. 27-3, at 21-22; 27-4, at 28-29.)

CIVIL 06-1072 (JAG)                    3

4.    On August 30, 1999, Debtors also filed a voluntary petition for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code. (Bankruptcy Court Docket No. 1.)

5.    The United States Trustee appointed Wigberto Lugo Mender, Esq., to act as the Chapter 7 Trustee (hereinafter "the Trustee"). (Bankruptcy Court Docket No. 2.)

6.    On September 20, 1999, Debtors filed their Schedules and Statement of Financial Affairs. (Bankruptcy Court Docket No. 5.)

7.    Debtors' counsel delivered a copy of the suits to the Trustee during the section 341 meeting of creditors. (Bankruptcy Court Docket Nos. 10 and 11.)

8.    Debtors filed in Schedule B-15, two accounts receivable owed by PRASA to Power-tronics, identifying them as Punta Santiago, $102,843.21 and Aguas Claras, $67,608.98. Debtors placed a value on each law suit at $4,000 in their filing of Schedule B-20. In Schedule C, Debtors claimed an exemption of $4,000 for each case, pursuant to 11 U.S.C. § 522(d)(5). Debtors did not amend these schedules. The Trustee did not file objections to these exemptions. (Id.)

9.    On December 1, 1999, the Trustee filed the Application for Employment of Attorney Carmen Conde. Carmen Conde filed a

CIVIL 06-1072 (JAG)                    4

statement along with the application for employment, pursuant to Federal Rule of Bankruptcy Procedure 2014. She disclosed her membership neither in the Board of Directors of the Government Development Bank (hereinafter "GDB") nor in the Board of Directors of the Puerto Rico Infrastructure Authority (hereinafter "AFI"). On May 4, 2000, the Bankruptcy Court approved the Application. (Bankruptcy Court Docket No. 13.)

10.    On August 24, 2000, Debtors received their discharge. (Bankruptcy Court Docket No. 45.)

11.    The Trustee requested that Berríos and Longo Law Firm (hereinafter "Berríos and Longo") continue with the legal representation of Debtors in the pending lawsuits against PRASA. Berríos and Longo represented Debtors in the suits and in matters concerning pre and post bankruptcy petition. On March 1, 2001, the Trustee filed an Application for Employment of Berríos and Longo. The law firm conditioned their application on a split of the proceeds between the estate and Debtors on a 50-50 basis and compensation on a contingency basis. (Bankruptcy Court Docket No. 59.)

12.    After a hearing regarding the application of this law firm, the Bankruptcy Court approved the appointment but not the

CIVIL 06-1072 (JAG)                           5

condition of a 50/50 split of the proceeds obtained in the lawsuits. (See Transcript of the Hearing held on April 19, 2001 at the Bankruptcy Court at 8-10; Bankruptcy Court Docket No. 66.)

13.    On August 15, 2001, Berríos and Longo sent a letter to Carmen Conde stating that "[e]ven after the exemptions were final and irreversible, the Debtors were willing to work in full cooperation with the Trustee and to share with the Estate the proceeds, if any, of the two exempted causes of action." (Bankruptcy Court Docket No. 122, app. 7.)

14.    On August 20, 2001, Berríos and Longo filed a motion informing non assumption of representation of the estate due to conflict of interests resulting from the modified contract terms. (Bankruptcy Court Docket No. 78.)

15.    On February 19, 2002, the Trustee withdrew the application for employment of special counsel Berríos and Longo. In turn, the Trustee maintained Carmen Conde and her law firm as his special counsel. (Docket Nos. 108; 111.)

16.    The Trustee asked the local courts to stay the suits until the Bankruptcy Court could determine who had title over these causes of action. Instead, the Court of First Instance, San Juan Part, dismissed the suits without prejudice, reserving jurisdiction

CIVIL 06-1072 (JAG)                        6

to order reopening of the cases at the request of the parties. (Bankruptcy Court Docket No. 182, at 5.)

17.  On December 5, 2002, the Trustee filed a motion submitting an offer and compromise with PRASA, in order to settle the litigation.  The settlement agreement stated $50,000 for each case. The Trustee requested court's approval pursuant to Federal Rule of Bankruptcy Procedure 9019.  (Bankruptcy Court Docket Nos. 120 and 121.)

18.  On December 12, 2002, Berríos and Longo sent a letter to Carmen Conde raising the issue of an alleged conflict of interests because of her membership in the GDB and AFI.  On December 20, 2002, Conde sent her a reply letter.  (Bankruptcy Court Docket No. 141, Ex. 5 and 6.)

19.  The Bankruptcy Court approved the agreement settling all pending claims between the Trustee and the bankruptcy estate. The agreement settled both suits for $100,000 or $50,000 each. The Trustee stated that he would deliver $8,000 of settlement proceeds to Debtors in full satisfaction of their claimed exemptions.  (Bankruptcy Court Docket No. 182.)

20.  The opinion and order of the Bankruptcy Court which is now appealed concluded that (I) the circumstances of the case show

CIVIL 06-1072 (JAG)                     7

Debtors undervalued the suits when listing the assets as contingent claims with a market value of $4,000 each; (ii) the exemptions claimed in Schedule C do not cover the entire market value of the suits listed both as contingent claims and accounts receivable, and are limited to Debtors' $8,000 interest in the assets; (iii) the suits listed as assets under contingent claims were property of the estate and were not removed from the estate and the administration by the Trustee, by the exemption claimed by Debtors; (iv) the Trustee had no reason to object to the exemptions; (v) the Trustee can administer the suits listed as contingent claims and have the authority to settle these claims subject to court approval; (vi) the Bankruptcy Court has jurisdiction to approve the settlement and approve the agreement; and (vii) Debtors do not have a right to try this equitable matter before jury. (Bankruptcy Court Docket No. 182.)

21. Appellants' brief was filed on March 8, 2006. (Docket No. 10.) Appellants' reply brief was filed on June 7, 2006 and a

CIVIL 06-1072 (JAG)                    8

supplemental motion was filed on June 9, 2006.  (Docket Nos. 28 and 29.)[1]

22.    Appellee's brief was filed on April 24, 2006.  Appellee's sur-reply brief was filed on June 29, 2006.  (Docket Nos. 15 and 32.)

## II.  PARTIES' ISSUES ON APPEAL

The parties disagree as to the scope of the issues on appeal.  Appellants present 14 issues, but the appellee argues that the same can be narrowed down to three issues.  (Docket No. 15-1, at 6). In consideration of each of the 14 issues presented by the appellants, their appeal refers to all seven conclusions of the Bankruptcy Court. Therefore, I have reviewed the entire Opinion and Order and the evidence on record. I find that all 14 issues can be narrowed down to the three issues presented by the Appellee.  Those are the following:

1.    Whether the Bankruptcy Court correctly concluded that the suits against the [PRASA] listed by the Debtors in their schedules are properties of the estate and were not removed from the estate by the exemption claimed by the Debtors.
2.    Whether the Bankruptcy Court [correctly concluded] that [the] Debtors do not have [the] right to have this equitable matter tried before a jury.
3.    Whether the Bankruptcy Court correctly concluded that counsel for the Trustee did not have an actual or potential undisclosed conflict of interest which mandated disqualification.

(Docket No. 2, at 1, ¶ 1; at 2, ¶¶ 2 & 3.)

---

[1]Appellants used this reply brief to further extend these issues on appeal.  I will not consider these further statements because this is an appeal from an opinion and order. I will consider the bankruptcy evidence on record, the opinion and order and the parties' statements related to the contested matters in this appeal.

CIVIL 06-1072 (JAG)                    9

### III.  STANDARD OF REVIEW

"All appeals from the Bankruptcy Court are to the First Circuit Bankruptcy Appellate Panel unless a timely election is filed to have an appeal heard by the district court pursuant to 28 U.S.C. § 158(c)(1) and Rule 8001(e) of the Federal Rules of Bankruptcy Procedure." <u>Local Rules of the United States District Court for the District of Puerto Rico</u> Rule 77.2(d) (2004).  Final orders of the Bankruptcy Court may be appealed to the district court and interlocutory orders may be appealed only with leave of the district court.  28 U.S.C. § 158(a)(1), (3).

"Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous," pursuant to Federal Rule of Bankruptcy Procedure 8013, while conclusions of law are review de novo.  <u>In re Marrama</u>, 313 B.R. 525, 529 (1st Cir. B.A.P. 2004), <u>aff'd</u>, 430 F.3d 474 (1st Cir. 2005), <u>cert. granted</u>, 126 S. Ct. 2859 (2006); <u>see also</u> <u>T I Fed. Credit Union v. DelBonis</u>, 72 F.3d 921, 928 (1st Cir. 1995); <u>In re LaRoche</u>, 969 F.2d 1299, 1301 (1st Cir. 1992); <u>Matter of Rosa</u>, 196 B.R. 231, 234 (D.P.R. 1996).  "A finding of fact is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made."  <u>Mitchell v. United States</u>, 141 F.3d 8, 17 (1st Cir. 1998). "The standard is so exacting that where two views of the evidence are plausible, the trial court's preference cannot be deemed to be clearly erroneous, and may not be disturbed even where the appellate court would have held otherwise."  <u>In re Díaz</u>, 261 B.R. 546, 548 (D.P.R. 2001) (citing <u>Williams v. Poulos</u>, 11 F.3d 271, 278 (1st

CIVIL 06-1072 (JAG)                    10

Cir. 1993)).  "The application of the [bankruptcy] code to a particular case poses a mixed question of law and fact, which is subject to review for clear error unless the bankruptcy court's analysis was infected by legal error or based on a mistaken impression of applicable legal principles."  In re Indep. Eng'g Co., 197 F.3d 13, 16 (1st Cir. 1999).  District courts give considerable deference to a bankruptcy judge's factual determinations and discretionary judgments.  In re Díaz, 261 B.R. at 548-49.

Appellants claim that this court must review de novo the findings of fact and the conclusions of law because there was no hearing or testimony and the findings of fact made by the Bankruptcy Court are derived from the documents on the record. (Docket No. 10, at 2, ¶ 3.)  To the contrary, Appellee states that this court must use the clearly erroneous standard, because the appeal concerns the extent of an exemption claimed by the Debtors over an asset of the estate and the authority of the Trustee to administer it. (Docket No. 15-1, at 7, ¶ 4.)  Having considered both arguments it is my conclusion that this appeal concerns a core proceeding issue, since it relates directly to the administration of the estate.  See 28 U.S.C. § 157. Therefore, the findings of fact are reviewed under the clearly erroneous standard and the conclusions of law are reviewed de novo.

IV.  ANALYSIS

A.  Approval of the settlement

When a debtor files a bankruptcy petition its property becomes property of the bankruptcy estate.  11 U.S.C. § 541.  However, the debtor may claim certain

CIVIL 06-1072 (JAG)                    11

properties as exempt.  "The debtor shall file a list of property that the debtor claims

as exempt under subsection (b) of this section . . . Unless a party in interest objects,

the property claimed as exempt on such list is exempt."  11 U.S.C. § 522(l).  The

trustee may file objections to the list of property claimed as exempt within 30 days

after the meeting of creditors. Fed. R. of Bankr. P. 4003(b).  If no objection is made

within the 30 day period, the trustee is precluded from challenging the exemptions.

Taylor v. Freeland & Kronz, 503 U.S. 638, 643 (1992).

    In Schedule B - Personal Property, and Schedule C - Property Claimed as

Exempt, Debtors claimed $4,000 for each lawsuit for a total amount of $8,000 under

section 522(d)(5).[2]  (Bankruptcy Court Docket No. 5.)[3]  The Trustee did not file

objections to these exemptions.  Then, the Trustee announced to the Bankruptcy

Court that he had settled these lawsuits for a total of $100,000 without assistance

from the Debtors or the law firm of Berríos and Longo, which was the legal counsel

---

[2]Debtors filed their bankruptcy petition on August 24, 1999.  Section 522(d)(5) as written in that year applies.  It allowed an exemption of "debtor's aggregate interest in any property, not to exceed in value $850 plus up to $8,075 of any unused amount" of the homestead exemption of section 522(d)(1). 11 U.S.C. § 522 (1999). This section was amended to allow an exemption not to exceed in value $975 plus up to $9,250 of any unused amount of the homestead exemption. 11 U.S.C. § 522(d)(5) (2004 & Supp. 2006).

[3]The lawsuits were identified in the Debtors Schedule B as other contingent and unliquidated claims of every nature including tax refunds, counterclaims of the debtor and rights to set off claims:  P.R. Aqueduct and Sewer Authority, Aptdo. Postal 235, Caguas, PR 00726, Civil Suit KAC 99-1225 and KAC 99-1226 with a market value of $4,000.00 each, which means that the value claimed as exempt is a total of $8,000 for both lawsuits.  (Bankruptcy Court Docket No. 5.)

CIVIL 06-1072 (JAG)                    12

representing the Debtors in these claims.  (Docket No. 15, app. 43, at 3, ¶ 1.)  The

Trustee recommended approval of the settlement to the Bankruptcy Court, stating

that he would deliver $8,000 to the Debtors in satisfaction of their claimed

exemptions and the rest of the money would go to the estate.  (Id.)  Debtors'

contention is that two judicial cases were claimed as exempt <u>including their entire</u>

<u>value and title</u>.  Debtors rely on the rulings of <u>Taylor v. Freeland & Kronz</u>, 503 U.S.

638 (1992).  Debtors allege that since the Trustee did not object the exemptions

claimed over the two lawsuits, he is now precluded from claiming the value in excess

of $8,000 as part of the estate.  (Docket No. 10, at 11, ¶ 1.)  Debtors are now

claiming that they are entitled to the entire amount of the settlement because "the

date of valuation of an asset for purposes of determining whether it can be exempted

is the date on which the petition for bankruptcy is filed; it is not a later date on

which the asset may be worth a lot more." (Docket No. 10, at 24, ¶ 2.)  The Trustee

argues that Debtors are entitled to the $8,000 claimed as exempt and not to the

entire value of the settlement.  (Docket No. 15-1, at 8, ¶ 4.)

     The Bankruptcy Court correctly distinguished <u>Taylor</u> from the case at bar.  In

<u>Taylor</u>, the debtor claimed an exemption over the "unknown" amount  that she

expected to receive in her discrimination suit and the trustee failed to timely object.

<u>Taylor v. Freeland & Kronz</u>, 503 U.S. at 642.  In the case at bar, debtors claimed as

exempt property of $4,000 for each claim, a total of $8,000.  The Bankruptcy Court

even referred that Debtors lacked candor in scheduling the suits under two separate

CIVIL 06-1072 (JAG)                    13

categories and the enormous difference between the scheduled market value of both categories and the amount claimed in the lawsuits.[4]  There is no clear error in the findings of fact of the Bankruptcy Court.  Debtors did schedule the suits under two categories and then only claimed an exemption of $8,000 for both lawsuits as personal property.  They did not request an exemption under the accounts receivable, which was the other category where the Debtors claimed both lawsuits. Also the claimed exemptions were within the amount provided by section 522(d)(5). Thus, the Trustee had no basis for objecting to this amount.  The Bankruptcy Court relied on In re Hyman, 967 F.2d 1316, 1319 n.6 (9th Cir. 1992) to claim that "[a]ny ambiguity in schedules caused by the Debtors must be construed against them." (Docket 15, app. 43, at 11-12.)  I concur with the court's conclusion.

These lawsuits were part of the outstanding accounts receivable of Power-tronics, which means  that Debtors may file in their schedules exemptions for the alleged personal damages as claimed in these lawsuits.  The remaining causes of action are claims of Power-tronics and not of its shareholders, meaning that these are corporate causes of action, wherefore under state law the corporate entity continues its existence for three years after its extinction or dissolution.  See P.R. Laws Ann. tit. 14, § 3008.  Debtors were impeded from asserting causes of action

---

[4]Debtors scheduled the suits as accounts receivable under items 10 and 11 in Attachment 1 to Schedule B, as Aguas Claras and Punta Santiago projects with market values of $102,843.21 and $67,608.98, respectively.  (Bankruptcy Court Docket No. 5, at 10.)

CIVIL 06-1072 (JAG)                    14

that are not theirs, rather from the corporate entity that they represented in the lawsuits.  In the lawsuits, Debtors claimed as their personal damages $370,000 in KAC 99-1225 and $315,000 in KAC 99-1226.  (Docket No. 84, at 10, Ex. 3, at 8, ¶ 38; at 22, Ex. 4, at 38-39, ¶ 41.)  I believe that the $8,000 claimed as exempt by the Debtors are for these alleged personal damages.  Debtors did not claim an exemption over the accounts receivable, because they knew that these outstanding claims were of Power-tronics and not their personal property.

Further, as the Bankruptcy Court interpreted, in <u>Taylor</u> the trustee did not show any interest in prosecuting the discrimination suit in dispute.  To the contrary the Trustee in the case at bar,  did show interest and finally reached an agreement.  In my review de novo of the conclusions of law there is also no misinterpretation of the Bankruptcy Court related to <u>Taylor</u>.  As explained by the court, when Debtors claimed an amount for the entire asset, they are only entitled to such an amount and not to the entire value of the asset.  The bankruptcy estate retains an interest over the rest of the amount not claimed as exempt.  "[D]ebtor's property remains property of the estate to the extent its value exceeds the statutory amount which the debtor is permitted to exempt."  <u>In re Gaylor</u>, 123 B.R. 236, 239 (Bankr. E.D. Mich. 1991); <u>see also</u> <u>In re Soost</u>, 262 B.R. 68, 72 (8th Cir. B.A.P. 2001) ("the exempted interest has a value that is equal to the amount of the claimed exemption.  Under these circumstances the bankruptcy estate retains an interest in the subject asset because only a partial interest has been exempted by the debtor.")

CIVIL 06-1072 (JAG)                    15

The causes of action that refer to the corporate damages for breach of contract or for payments to the corporation of accounts receivable are property of the estate and thus, not subject to the exemptions claimed by Debtors.  Pursuant to section 522(d)(5), Debtors' exemptions were for their personal damages as asserted in the complaints.  The Trustee correctly settled the lawsuits for the interest of the Debtors, the estate and creditors.

### B.  Right to trial by jury

Debtors also claim that the Bankruptcy Court erred in not providing trial by jury.  They allege that the court "failed to address that the ultimate issue before it is a two party dispute, related to the title (ownership) of the two causes of action at hand."  (Docket No. 10, at 28, ¶ 2.)  As the Bankruptcy Court stated, the ultimate issue referred to an exemption claim under section 522(d)(5), thus equitable in nature and related to the administration of the estate.  Those issues are under the sole authority of the Bankruptcy Court.  (See Bankruptcy Court Docket No. 182, at 18.)  Bankruptcy courts have jurisdiction to deal with controversies arising over the property in their actual or constructive possession.  Katchen v. Landy, 382 U.S. 323, 327 (1966).  "So, in cases of bankruptcy, many incidental questions arise in the course of administering the bankrupt estate, which would ordinarily be pure cases at law, and in respect of their facts triable by jury, but, as belonging to the bankruptcy proceedings, they become cases over which the bankruptcy court, which

CIVIL 06-1072 (JAG)                          16

acts as a court of equity, exercises exclusive control." <u>Barton v. Barbour</u>, 104 U.S. 126, 134 (1881); <u>Muratore v. Darr</u>, 375 F.3d 140, 143 (1ˢᵗ Cir. 2004).

Whether the rights afforded by the Seventh Amendment of the United States Constitution are applicable to a particular case, courts must determine if they are confronted with actions requesting remedies at law or actions inherently equitable in nature.  If the action relates to remedies at law, the parties are entitled to a trial by jury, to the contrary, if it is an action in equity the trial court may dispose of the claim without affording the right of a trial by jury. <u>See</u> <u>Ross v. Bernhard</u>, 396 U.S. 531, 533 (1970); <u>Parsons v. Bedford, Breedlove & Robeson</u>, 28 U.S. 433, 447 (1830).

It is my conclusion that when Debtors submitted themselves to the equitable jurisdiction of the Bankruptcy Court, they adhere to the procedures of the court. Debtors are impeded from asserting a right to trial by jury, when the issue concerns a core proceeding equitable in nature.

C. Counsel undisclosed conflict of interests

On May 4, 2000, the Bankruptcy Court approved the Application for Employment of Attorney Carmen Conde as counsel for the Trustee.  (Bankruptcy Court Docket No. 13.) On March 26, 2001, Carmen Conde was appointed a member of the Board of Directors of the GDB, and therefore to the Board of Directors of its subsidiary AFI.  (Bankruptcy Court Docket No. 137, Ex. 2.)  The Trustee also filed an Application for Employment of Berríos and Longo Law Firm, which were counsel

CIVIL 06-1072 (JAG)                    17

for Debtors in the civil suits.  The Bankruptcy Court approved the employment of Berríos and Longo without the conditions set forth in the agreement for the distribution of the proceeds of the lawsuits.  (Bankruptcy Court Docket No. 66.)  On August 20, 2001, Berríos and Longo filed a motion informing non assumption of representation of the estate due to a conflict of interests resulting from the modified contract terms.  (Bankruptcy Court Docket No. 78.)  Berríos and Longo further stated that both causes of action were excluded from the property of the estate, since Debtors claimed exemptions over these lawsuits in Schedule C.  (Bankruptcy Court Docket No. 78.)  On February 19, 2002, the Trustee withdrew the application of Berríos and Longo.  (Bankruptcy Court Docket No. 108.)  On December 5, 2002, the Trustee filed a motion submitting compromise and settlement offer with PRASA in the amount of $100,000 for both lawsuits.  (Bankruptcy Court Docket No. 121.)  On December 12, 2002, Berríos and Longo sent a letter to Carmen Conde raising the issue of her alleged conflict of interests due to her membership in the Board of Directors of GDB and AFI.  (Bankruptcy Court Docket No. 137, Ex. 5 and Ex. 6.)  On December 20, 2002, Carmen Conde sent a reply letter to Berríos and Longo stating that her membership in the Board of Directors of GDB and AFI do not constitute executive authority over PRASA, as defined on the Law of Governmental Ethics, P.R. Laws Ann. tit. 3, § 1824(a), (f).  Attorney Conde stated that she has not acted in her official capacity as counsel for the Trustee and that Aguas Claras and Punta Santiago projects are not financed by AFI.  (Bankruptcy Court Docket No. 126, Ex. 7.)

CIVIL 06-1072 (JAG)                    18

Debtors aver that Carmen Conde had an undisclosed conflict of interests from her activities as a member of the Board of Directors of GDB and AFI and that Conde had an interest adverse to the estate and was not a disinterested person.  As stated by the court, Conde explained that PRASA has its own Board of Directors separate from AFI's Board.  (Bankruptcy Court Docket No. 182, at 13.)  AFI provides financing and administration of some strategic special projects of PRASA which are totally unrelated to the projects involved in the lawsuits. (Bankruptcy Court Docket No. 182, at 14.)  The Bankruptcy Court in its sole judgment revised the arguments of both sides and decided that there was no conflict of interests.  The court stated that Debtors failed in proving the initial burden of demonstrating Carmen Conde's actual or potential undisclosed conflict of interests.  Then, the court adopted as its own and incorporated Carmen Conde and the United States Trustee's reasoning in Docket Nos. 141, 152 and 155 of the Bankruptcy Court.  (Id.)

Section 327(a) of the Bankruptcy Code permits the employment of professional persons, like attorneys, to represent and assist the trustee in carrying out his duties. 11 U.S.C. § 327(a); Fed. R. Bankr. P. 2014. This section requires the court's approval of such employment before this person can actually perform his/her professional duties. There is a two-part test in the employment of the professional; first the professional must "not hold or represent an interest adverse to the estate" and must be a "disinterested person[ ] . . . ." 11 U.S.C. § 327(a).  The first part of the test is not defined in the Bankruptcy Code.  Therefore, some courts, including

CIVIL 06-1072 (JAG)                    19

the First Circuit Court of Appeals, have adopted the definition of <u>In re Roberts</u>, 46

B.R. 815 (Bankr. D. Utah 1985), <u>aff'd in part, modified in part and reversed in part</u>

<u>by</u> 75 B.R. 402 (D. Utah 1987):

> (1) to possess or assert any economic interest that would
> tend to lessen the value of the bankruptcy estate or that
> would create either an actual or potential dispute in which
> the estate is a rival claimant; or (2) to possess a
> predisposition under circumstances that render such a
> bias against the estate.

<u>In re Roberts</u>, 46 B.R. at 827; <u>see</u> <u>In re Arochem Corp.</u>, 176 F.3d 610, 623 (2d Cir.

1999); <u>In re Crivello</u>, 134 F.3d 831, 835 (7th Cir. 1998); <u>Rome v. Braunstein</u>, 19

F.3d 54, 58 n.1 (1st Cir. 1994); <u>In re Hot Tin Roof, Inc.</u>, 205 B.R. 1000, 1003 (1st

Cir. B.A.P. 1997).

     "Disinterested person" is defined as one who "does not have an interest

materially adverse to the interest of the estate or of any class of creditors or equity

security holders, by reason of any direct or indirect relationship to, connection with,

or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14)(c). "These

statutory requirements-disinterestedness and no interest adverse to the estate-serve

the important policy of ensuring that all professionals appointed pursuant to section

327(a) tender undivided loyalty and provide untainted advice and assistance in

furtherance of their fiduciary responsibilities." <u>Rome v. Braunstein</u>, 19 F.3d at 58.

     In deciding whether there is a conflict of interests bankruptcy judges must,

on a case by case basis, perform an objective test of the facts and circumstances that

CIVIL 06-1072 (JAG)                    20

may render the appointment of such attorney as materially adverse to the estate or the creditors.  Bankruptcy judges must carefully scrutinize whether there is actual, potential or a perception of a potential conflict.  See In re Martin, 817 F.2d 175, 182 (1st Cir. 1987).  Therefore, whether a disqualifying conflict of interests exists must be considered under the particular facts and circumstances of the case.  The standard is discretionary in itself.  Thus, I may only recommend to set aside the application for employment if the Bankruptcy Court abused its discretion.  "When evaluating proposed retention, a bankruptcy court 'should exercise its discretionary powers over the approval of professionals in a manner which takes into account the particular facts and circumstances surrounding each case and the proposed retention before making a decision.'"  In re AroChem Corp., 176 F.3d at 621 (quoting 3 Collier, ¶ 327.04[1][a] (15th ed. rev. 1998)).

Section 327 requires first, that the trustee demonstrate the capacity and qualifications of the attorney and then pursuant to Bankruptcy Rule 2014(a) the attorney's application must specify whether the attorney has any connection with creditors, debtors or with any other party that may represent an interest adverse to the estate.  Finally, the bankruptcy court will exercise its discretionary powers to determine the feasability of employing this attorney.  Bankruptcy judges have "wide discretion" to approve the appointment of a special counsel.  They are "on the front line, in the best position to gauge the ongoing interplay of factors and to make

CIVIL 06-1072 (JAG)                    21

the delicate judgment calls which such decision entails." In re Martin, 817 F.2d at

182.

     Based on 11 U.S.C. § 327(a), it is my conclusion that the bankruptcy court is

the sole authority to decide whether the professional person may perform the duties

for which she is employed and whether this person has any interest adverse to the

estate.  Having reviewed the facts considered by the Bankruptcy Judge, it is my

conclusion that there is no actual or potential conflict of interests between Carmen

Conde and her appointment as special counsel to settle the lawsuits.

## V.  CONCLUSION

     For the reasons stated above, it is my recommendation that the Bankruptcy

Court's opinion and order be affirmed in its entirety.

     Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any

party who objects to this report and recommendation must file a written objection

thereto with the Clerk of this Court within ten (10) days of the party's receipt of this

report and recommendation.  The written objections must specifically identify the

portion of the recommendation, or report to which objection is made and the basis

for such objections.  Failure to comply with this rule precludes further appellate

review.  See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973

F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec.

Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836

F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United

CIVIL 06-1072 (JAG)                    22

States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 18th day of November, 2006.


                                        S/ JUSTO ARENAS
                                Chief United States Magistrate Judge