**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

JORGE BARROSO HERRANS, MADELINE
O. ROSARIO FARRULLA,

    **Debtors-Appellants**

        **v.**

WIGBERTO LUGO MENDER,

    **Trustee-Appellee**

**CASE NO.** 06-1072(JAG)

CHAPTER 7

BANKRUPTCY NO. 99-11662

**OPINION AND ORDER**

GARCIA-GREGORY, D.J.

    Pending before the Court is Jorge Barroso and Madeline O. Rosario's ("Debtors") appeal from an opinion and order of the United States Bankruptcy Court for the District of Puerto Rico. (Docket No. 10). On May 4, 2006, this appeal was referred to a Magistrate Judge. On November 18, 2006 the Magistrate Judge issued a report and recommendation to affirm the decision of the Bankruptcy Court. (Docket No. 34). For the reasons set forth below, the Magistrate-Judge's report and recommendation is adopted in its entirety.

**FACTUAL AND PROCEDURAL BACKGROUND**

    Debtors were the sole shareholders of Powertronics Electrical and Mechanical Contractors, Inc. ("Powertronics"). This corporation was dissolved on August 24, 1999 due to the insolvency caused by the Puerto Rico Aqueducts and Sewer Authority's ("PRASA") alleged

Case No. 06-1072(JAG)                                                        2

breach of two construction contracts. (Bankruptcy Court Docket No. 122, app. 3).

On August 30, 1999, Powertronics, Debtors and their conjugal partnership filed two complaints in the Puerto Rico Court of First Instance (San Juan Part) against PRASA for two projects located at Punta Santiago (KAC 99-1225) and Aguas Claras (KAC 99-1226). (Dockets Nos. 27-3, at 13; 27-4, at 18.) Both complaints comprised three causes of action: 1) breach of contractual obligations and corporate damages, 2) personal damages of Debtors for their economic loss and financial distress and 3) accounts receivable of Powertronics. On that same date, Powertronics, Debtors and their conjugal partnership filed a voluntary petition for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code. (Bankruptcy Court Docket No. 1). The same day Debtors filed for bankruptcy protection, the United States appointed Wigberto Lugo Mender, Esq., ("the Trustee") to act as a the Chapter 7 Trustee . (Bankruptcy Court Docket No. 2). On September 20, 1999, Debtors filed their Schedules and Statement of Financial Affairs.  In Schedule B-15, Debtors filed two accounts receivable owed by PRASA to Powertronics identifying them as Punta Santiago, $102,843.21 and Aguas Claras, $67,608.98.  Debtors placed a value on each law suit at $4000 in their filing of Schedule B-20. In Schedule C, Debtors claimed an exemption of $4000 for each case, pursuant to 11 U.S.C. § 522(d)(5). The Trustee did not file objections to these exemptions.

Case No. 06-1072(JAG)                                          3

(Bankruptcy Court Docket No. 5).

On December 5, 2002, the Trustee informed the Bankruptcy Court that it had reached an agreement with PRASA for the settlement and the liquidation of the two cases before the State Court. The settlement agreement stipulated an amount of $50,000 for each case. (Bankruptcy Court Docket Nos. 120 and 121). The Bankruptcy Court approved the agreement, which settled both suits for $100,000. The Trustee stated that he would deliver $8000 of the settlement's proceeds to Debtor in full satisfaction of their claimed exemptions. (Bankruptcy Docket No. 182).

On October 17, 2005, the United States Bankruptcy Court for the District of Puerto Rico issued an opinion and order regarding several contested matters between Debtors and the Trustee. The opinion and order of the Bankruptcy Court concluded that: 1) the circumstances of the case show Debtors undervalued the suits when listing the assets as contingent claims with a market value of $4,000 each; 2) the exemptions claimed in Schedule C do not cover the entire market value of the suits listed both as contingent claims and accounts receivable, and are limited to Debtors' $8,000 interest in the assets; 3) the suits listed as assets under contingent claims were property of the estate and were not removed from the estate and the administration by the Trustee, by the exemption claimed by Debtors; 4)the Trustee had no reason to object to the exemptions; 5) the Trustee can administer the suits listed

Case No. 06-1072(JAG)                                                    4

as contingent claims and has the authority to settle these claims subject to Court approval; 6) the Bankruptcy Court has jurisdiction to approve the settlement and approve the agreement; and 7) Debtors do not have a right to try this equitable matter before a jury. (Bankruptcy Court Docket No. 182).

On October 28, 2005, Debtors filed their Notice of Appeal (Bankruptcy Court Docket No. 184) and filed their brief on March 8, 2006. (Docket No. 10). Appellants' reply brief was filed on June 7, 2006, and a supplemental motion was filed on June 9, 2006. (Docket Nos. 28 and 29). On April 24, 2006, the Trustee's brief was filed and his sur-reply brief was filed on June 29, 2006. (Docket Nos. 15 and 32).

On May 4, 2006, Debtors' appeal was referred to Chief Magistrate Judge Justo Arenas. (Docket No. 24). On November 18, 2006 the Magistrate Judge issued its Report and Recommendation, to affirm the decision of the Bankruptcy Court. The Report and Recommendation narrowed down Debtors' appeal to three main issues of law: 1) whether the Bankruptcy Court correctly concluded that the suits against PRASA, which were listed by the Debtors in their Schedules, are property of the estate and were not removed from the estate by the exemption claimed by the Debtors over both law suits; 2) whether the Bankruptcy Court correctly concluded that the Debtors do not have the right to have this equitable matter (the claim for exemption over an asset under bankruptcy law) tried

Case No. 06-1072(JAG)                                                5

before a jury; and 3) whether the Bankruptcy Court correctly concluded that counsel for the Trustee did not have an actual or potential undisclosed conflict of interest, which mandated her disqualification.

Regarding the first issue, the Magistrate Judge concluded that the suits against PRASA were property of the estate because they were corporate causes of action that involved the outstanding accounts receivables of Powertronics. The Report and Recommendation determined that Debtors $8,000 exemption was only for their personal damages and did not constitute an exemption over Powertronic's accounts receivable. The Magistrate Judge determined that Powertronic's accounts receivable were not part of Debtor's personal property. The Magistrate Judge also determined that a Debtor is precluded from asserting a right to trial by jury, when the issue concerns a core proceeding equitable in nature. The Report and Recommendation concluded that the exemption issued decided by the Bankruptcy Court was a core proceeding that was equitable in nature under the sole authority of the Bankruptcy Court. Consequently, the Magistrate Judge stated that Debtors were estopped from asserting a right to trial by jury. Finally, the Report and Recommendation concluded that counsel for Trustee had no actual or potential conflict of interest. (Docket No. 34).

On December 5, 2006, Debtors filed their objection to the Magistrate's Report and Recommendation. Debtors did not object to

Case No. 06-1072(JAG)                                                6

the Report and Recommendation's finding that counsel for the
Trustee had no potential or actual conflict of interest. (Docket
No. 35). On December 20, 2006, the Trustee filed "Appellee's
Position on Appellants' Opposition to the Magistrate's Report and
Recommendations" which states the Trustee's position regarding the
objections raised by Debtors. (Docket No. 36).

## STANDARD OF REVIEW

1) <u>Standard for Reviewing a Magistrate-Judge's Report and
Recommendation</u>

Pursuant to 28 U.S.C. §§ 636(b) (1) (B); Fed.R.Civ.P. 72(b);
and Local Rule 503; a District Court may refer dispositive motions
to a United States Magistrate Judge for a Report and
Recommendation. <u>See</u> <u>Alamo Rodriguez v. Pfizer Pharmaceuticals,
Inc.</u>, 286 F.Supp.2d 144, 146 (D.P.R. 2003). The adversely affected
party may "contest the Magistrate Judge's report and recommendation
by filing objections 'within ten days of being served' with a copy
of the order." <u>United States of America v. Mercado Pagan</u>, 286
F.Supp.2d 231, 233 (D.P.R. 2003) (quoting 28 U.S.C. §§ 636(b)(1)).
If objections are timely filed, the District Judge shall "make a de
novo determination of those portions of the report or specified
findings or recommendation to which [an] objection is made."
<u>Rivera-De-Leon v. Maxon Eng'g Servs.</u>, 283 F. Supp. 2d 550, 555
(D.P.R. 2003). The Court can "accept, reject, or modify, in whole
or in part, the findings or recommendations made by the

Case No. 06-1072(JAG)                                                    7

magistrate", however, if the affected party fails to timely file objections," the District Court can assume that they have agreed to the magistrate's recommendation'." <u>Alamo Rodriguez</u>, 286 F.Supp.2d at 146 (quoting <u>Templeman v. Chris Craft Corp.</u>, 770 F.2d 245, 247 (1st Cir. 1985).

## DISCUSSION

### 1) "Clearly Erroneous" Test

Debtors object to the Standard of Review adopted by the Report and Recommendation. The Report and Recommendation adopted the "clearly erroneous" test to review the findings of facts made by the Bankruptcy Court. Debtors argue that the applicable standard is the "de novo" test. The Court disagrees.

Appellate Bankruptcy Courts generally apply the clearly erroneous standard to findings of fact and de novo review to conclusions of law. <u>Marrama v. Citizens Bank of Mass.</u>, 313 B.R. 525, 529 (1st Cir. B.A.P. 2004). "The more fact-dominated the question, the more likely it is that the trier's resolution of it will be accepted unless shown to be clearly erroneous." <u>In re Extradition of Howard</u>, 996 F.2d 1320, 1328 (1st Cir. 1993); <u>see also In re Diaz</u>, 261 B.R. 546, 548 (D.P.R. 2001). The Bankruptcy Court's findings will be considered clearly erroneous if, after a review of the entire record, there is a definite and firm conviction that a mistake has been committed. <u>Bezanson v. Thomas</u>,

Case No. 06-1072(JAG)                                                    8

402 F.3d 257, 264 (1st Cir. 2005); In re Watman, 301 F.3d 3, 8 (1st Cir. 2002). District Courts hearing bankruptcy appeals give considerable deference to a Bankruptcy Judge's factual determinations and discretionary judgments. In re Diaz, 261 B.R. 546, 548-549 (D.P.R. 2001). As a result, where there are two plausible views of the evidence, the interpretation assigned by the lower Court must be adopted. Williams v. Poulos, 11 F.3d 271, 278 (1st Cir. 1993).

The clearly erroneous standard ordinarily applies when reviewing a trial Court's resolution of mixed questions of law and fact. Id. In such cases, the Appellate Court must determine whether the Bankruptcy Court's decision was infected by legal error. Id. Thus, the application of the Bankruptcy Code to a particular case, which poses a mixed question of law and fact is subject to review for clear error unless the Bankruptcy Court's analysis was infected by legal error or based on a mistaken impression of applicable legal principles. In re Independent Eng'g Co., 197 F.3d 13, 16 (1st Cir. 1999).

Generally speaking, a proceeding which 'arises under' the bankruptcy laws is considered core. See 28 U.S.C. § 157(b)(1); In re Tully, 818 F.2d 106, 108 (1st Cir. 1987); In re Sheridan, 362 F.3d 96, 106 (1st Cir. 2004). "Related to" actions are non-core. "Determination of what is core and what is non-core has not always been easy... '[A] procedure is core ... if it invokes a substantive

Case No. 06-1072(JAG)                                                    9

right provided by title 11 or if it is a procedure that, by its nature, could arise only in the context of a bankruptcy case.'" In re Palmer Trucking Co., 201 B.R. 9, 17 (Bankr. D. Mass. 1996) quoting Ralls v. Docktor Pet Ctrs., Inc., 177 B.R. 420, 424 (D. Mass.1995). A core proceeding, unlike its non-core counterpart, "relates to a function essential to the administration of the bankruptcy case." Sheridan, 362 F.3d at 106. "If the proceeding, by its nature, arises only within the bankruptcy context because it involves a right created by federal bankruptcy law, then it is a core proceeding." In re Scotland Guard Servs., 179 B.R. 764, 766-67 (Bankr. D.P.R. 1993)

The distinction between core and non-core proceedings has a significant impact on the standard of review that is applied by both the District Court and the Court of Appeals. See In re Bank of New England Corp., 364 F.3d at 361. "Bankruptcy Rules 7052 and 8013, which require the application of the clearly erroneous standard to a Bankruptcy Court's findings of fact, are constitutional as applied to core proceedings." Briden v. Foley, 776 F.2d 379, 381 (1st Cir. 1985). Thus, in reviewing a Bankruptcy Court's determination of a core proceeding, that Court's findings of fact will be accepted by the District Court unless clearly erroneous. In re Tully, 818 F.2d 106, 108 (1st Cir. 1987). Nonetheless, a core proceeding's conclusion of law is reviewed de novo. In re Bank of New England Corp., 364 F.3d 355, 361 (1st Cir.

Case No. 06-1072(JAG)                                          10

2004). Basically, in a review of a core proceeding, the District Court must look directly to the Bankruptcy Court's decision, examining that Court's findings of fact for clear error and its conclusions of law de novo. See In re Bank of New England Corp., 364 F.3d at 361.

In the present case, the core issue is the extent of an exemption claimed by Debtors over an asset of the estate and the authority of the Trustee to administer it. This issue concerns a core proceeding because it relates directly to the administration of the estate. Consonant with prior First Circuit rulings, the finding of facts made by the Bankruptcy Court must be reviewed utilizing the "clearly erroneous" test and the conclusion of laws shall be reviewed de novo. Therefore, the standard applied by the Magistrate Judge is correct.

   2) Approval of the Settlement

Debtors also object to the Magistrate Judge's finding that the causes of action against PRASA were property of the estate and thus, not subject to the exemptions claimed by the Debtors. The Magistrate Judge concluded that there were separate causes of action for Powertronic's corporate damages and collection of accounts receivable, and for Debtors' personal and individual damages claim. Debtors claim that all of the causes of actions belong to them in their individual capacity upon the dissolution of Powertronics and that all of the causes of action against PRASA

were included in the exemptions claimed before the Bankruptcy Court. This Court agrees with the Magistrate Judge's determination that the causes of action that refer to the corporate damages or for payment to the corporation of accounts receivable are property of the estate and thus, not subject to the exemptions claimed by Debtors.

When a debtor files a bankruptcy petition its property becomes part of the bankruptcy estate. 11 U.S.C. § 541. The debtor can file a list of property that he claims as exempt. 11 U.S.C. § 522(1). The property claimed as exempt on such list is not part of the estate unless a party in interest objects. Id. The Trustee may file objections to the list of property claimed as exempt within the 30 days after the meeting of creditors. Fed. R. of Bankr. P. 4003(b). If the trustee does not object to the debtor's claimed exemptions within the 30 day period, he is precluded from challenging the exemptions. Taylor v. Freeland & Kronz, 503 U.S. 638, 643 (1992).

However, when a debtor takes an exemption in a particular asset pursuant to section 522, the "property claimed as exempt" within the meaning of section 522 is merely an interest in property not to exceed a specified value. See 11 U.S.C. § 522(d)(5); Owen v. Owen, 500 U.S. 305, 310 (1991) ("Most of the federally listed exemptions (set forth in section 522(d)) are explicitly restricted to the 'debtor's aggregate interest' or the 'debtor's interest' up to a maximum amount."). Accordingly, where the value of an asset

Case No. 06-1072(JAG)                                          12

exceeds the amount of the claimed exemption, the asset as a whole does not become exempt. See Wissman v. Pittsburgh Nat'l Bank, 942 F.2d 867, 871 (4th Cir. 1991) ("We do not agree . . . that by claiming [as exempt] a value less than the statutory maximum, or no value at all, as in this case, the entire property becomes exempt."). Instead, only a partial interest representing a certain amount of the asset's value is exempted. In re Soost, 262 B.R. 68, 72 (8th Cir. B.A.P. 2001). Specifically, the exempted interest has a value that is equal to the amount of the claimed exemption. Id. Under these circumstances, the bankruptcy estate retains an interest in the subject asset because only a partial interest has been exempted by the debtor. See In re Gaylor, 123 B.R. 236, 239 (Bankr. E.D. Mich. 1991) (the debtor's property remains property of the bankruptcy estate to the extent its value exceeds the amount of the debtor's exemption) (citations omitted). Thus, claiming an exemption in an asset does not necessarily preclude administration of that asset by the Trustee in bankruptcy. In re Soost, 262 B.R. at 72.

    In the case at bar, Debtors cite Taylor to support their argument that the law suits against PRASA were exempt. In Taylor the Debtor listed all of the future proceeds from an employee discrimination lawsuit in the schedule filed under section 522. Taylor, 503 U.S. at 642. The debtors listed the value of these exceptions as "unknown." Id. at 640. The Supreme Court interpreted

Case No. 06-1072(JAG)                                                    13

such a declaration, an asset with a listed value as "unknown" and a corresponding exemption value of "unknown", to mean that the debtor asserted an exemption claim against 100% of the asset's ultimate value. Id. at 642; see also In re Daly, 344 B.R. 304, 320 (Bankr. D. Pa. 2005).

In In re Green, 31 F.3d 1098 (11th Cir. 1994) the Eleventh Circuit addressed a similar fact pattern to that of Taylor. In said case, the debtor exempted the full value of her lawsuit and neither the Trustee nor any other interested party objected. Id. at 1100. However, the only factual distinction between In re Green and Taylor is that the debtor reported her lawsuit as having a value of one dollar instead of stating that it had an "unknown" value. Id. Nonetheless, the Court stated that the one dollar value signified an asset with a contingent value and that the Trustee was not mislead into thinking that the lawsuit claim was worth one dollar. Id. Consequently, the Court concluded that the debtor exempted the full value of her lawsuit. Id.

Thus, a debtor's declaration that an exemption claim of "unknown" value is asserted against property interest of an "unknown" value is to be interpreted as a debtor's claim that 100% of the value of the property interest is being claimed as exempt. Taylor, 503 U.S. at 642; In re Green, 31 F.3d at 1100; In re Daly, 344 B.R. at 321. Accordingly, in those instances where Debtor's exemption schedules reflect an exemption amount equal to the

Case No. 06-1072(JAG)                                             14

property's listed value amount, he has attempted to exempt 100% of his property interest regardless of the property's ultimate valuation amount. In re Daly, 344 B.R. at 321.

In the present case, Debtors scheduled the PRASA suits under two categories and then only claimed an exemption of $8,000 for both lawsuits as personal property. Debtors claim that they were uncertain of the value and fate of the causes of action and decided to furnish each of them with a market value of $4,000. There is a substantial difference between the schedule market value of $8,000 and the amount claimed in the lawsuits.[1] Nonetheless, the claimed exemptions were within the amount provided by section 522(d)(5).[2]

Unlike Taylor, Debtors did not list the value of the lawsuits against PRASA as 'unknown'. Moreover, the fact that Debtors assigned a $8,000 value to the two lawsuits, whose listed combined market value was of $170,452.19, cannot be interpreted to signify that Debtors intended to exempt 100% of the value of said lawsuits. The assigned $8,000 market is not a nominal amount that equates to an exemption claim against 100% of the asset's ultimate value.

Pursuant to section 522(d)(5), the claimed exemptions pertain

_____

[1] Debtors scheduled the suits against PRASA in Aguas Claras and Punta Santiago with the values of $102,843.21 and $67,608.98, respectively. (Bankruptcy Court Docket No. 5, at 10).

[2] At the time the bankruptcy petition was filed, section 522(d)(5) allowed an exemption of "debtor's aggregate interest in any property, not to exceed in value $850 plus up to $8,075 of any unused amount" of the homestead exemption of section 522(d)(1). 11 U.S.C. § 522 (1999).

to Debtors personal damages as asserted in the complaints against
PRASA. The rest of the value of the lawsuits correspond to
Powertronics's breach of contract claim against PRASA and
Powertronic's accounts receivable owed by PRASA. This conclusion is
in accordance with the determinations of the Bankruptcy Court and
the Magistrate Judge's Report and Recommendation.

Upon a review of the PRASA complaints, it can be noted that
Debtors specifically included Powertronics as a Plaintiff with a
separate identity from themselves. In the state court complaints,
Debtors do not contend they are entitled to the totality of the
proceeds claimed in the lawsuits, on the contrary, they request
separate and distinct remedies for Powertronics and for them in
their individual capacity. Furthermore, Debtors scheduled the suits
under two categories and then only requested an exemption as
personal property and not under the accounts receivable category,
which was the other category where Debtors claimed both lawsuits.
Consequently, in accordance with the Magistrate Judge's Report and
Recommendation, this Court concludes that the PRASA lawsuits were
part of the outstanding accounts receivable of Powertronics and
that Debtors could only file exemptions in their schedules for
their alleged personal damages.

Thus, Debtor's $8,000 claimed exemptions only represent a
partial interest of the whole value of the PRASA lawsuits. The
bankruptcy estate retains an interest in the PRASA lawsuits because

Case No. 06-1072(JAG)                                              16

only a partial interest has been exempted by the debtor. As a
result, the rest of the value of the PRASA lawsuits, which refer to
the corporate damages for breach of contract and for payments to
the corporation of accounts receivable are property of the estate.

    3) <u>Right to Trial by Jury</u>

    Debtors also object to the Magistrate Judge's determination to
reaffirm the correctness of the Bankruptcy Court's ruling that they
were not entitled to a trial by jury. Debtors allege that the
Magistrate-Judge's finding regarding their right to trial by jury
was erroneous because the matter was not heard by the Bankruptcy
Court through an adversary proceeding. This Court disagrees with
Debtor's position.

    The right of trial by jury provided by the Seventh Amendment
is considered an absolute right but it does not extend to cases of
equity jurisdiction. <u>Katchen v. Landy</u>, 382 U.S. 323, 337
(1966)(internal quotations omitted). A party is entitled to a trial
by jury in actions that relate to remedies at law. <u>See</u> <u>Ross v.
Bernhard</u>, 396 U.S. 531, 533 (1970). However, if it is an action in
equity the trial Court may dispose of the claim without affording
the right of a trial by jury. <u>Id.</u> If it is conceded or clearly
shown that a case is one of equity jurisdiction, "the trial of
questions involved in it belongs to the court itself, no matter
what may be its importance or complexity." <u>Id.</u> In bankruptcy
cases, "many incidental questions arise in the course of

administering the bankrupt estate, which would ordinarily be pure cases at law, and in respect of their facts triable by jury, but, as belonging to the bankruptcy proceedings, they become cases over which the bankruptcy court, which acts as a court of equity, exercises exclusive control." Muratore v. Darr, 375 F.3d 140, 143 (1st Cir. 2004)(citing Barton v. Barbour, 104 U.S. 126, 134 (1881)); see also Landy, 382 U.S. at 33.

It is important to note that the Supreme Court and the First Circuit have yet to determine if there is a constitutional impediment to granting trial by jury in bankruptcy proceedings that relate to core matters. In re Dooley Plastic Co., 182 B.R. 73, 78 (D. Mass. 1994). The Second Circuit was the first to address the question. In re Ben Cooper, Inc., 896 F.2d 1394 (2nd Cir. 1990), cert. granted, 497 U.S. 1023 (1990), judgment vacated and remanded, 498 U.S. 964 (1990), opinion reinstated, 924 F.2d 36 (2d Cir. 1991), cert. denied, 500 U.S. 928 (1991). The Second Circuit held that "the bankruptcy courts may conduct jury trials in core proceedings." In Re Ben Cooper, 896 F.2d at 1402. The Eighth Circuit was the next Court to take on the question of whether jury trials may be had in the Bankruptcy Court. The Eighth Circuit rejected the Second Circuit's determination and held that a Bankruptcy Court could not conduct jury trials in core proceedings. See In re United Mo. Bank, N.A., 901 F.2d 1449, 1454-1456 (8th Cir. 1990). Every other circuit addressing the question of jury trials

Case No. 06-1072(JAG)                                                        18

in bankruptcy courts has followed the Eighth Circuit and has rejected the reasoning of the Second Circuit. See In Re Kaiser Steel Corp., 911 F.2d 380 (10th Cir. 1990); In Re Baker & Getty Financial Services, Inc., 954 F.2d 1169 (6th Cir. 1992); Matter of Grabill Corp., 967 F.2d 1152 (7th Cir. 1992); In Re Stansbury Poplar Place, Inc., 13 F.3d 122 (4th Cir. 1993); In Re Clay, 35 F.3d 190 (5th Cir. 1994). In In re Dooley Plastic Co., 182 B.R. 73, 79 (D. Mass. 1994) the United States District Court for the District Massachusetts also determined that Bankruptcy Courts could not conduct jury trials in core proceedings. Moreover, a majority of the Bankruptcy Courts in the First Circuit have held that there is no right to trial by jury in bankruptcy proceedings. See In re Aaron Gleich, Inc., 200 B.R. 464 (Bankr. D. Me. 1996); In re Scotland Guard Servs., 179 B.R. 764, 768 (Bankr. D.P.R. 1993); Braunstein v. Dickinson, 156 B.R. 111, 112 (Bankr. D. Mass. 1993).

There are several reasons why the majority of Court of Appeals and District Courts have held that there is no right to trial by jury in bankruptcy proceedings. First, a literal reading of 28 U.S.C. § 157(b)(1), which provides that "bankruptcy judges may hear and determine all cases," has been interpreted to signify that Congress granted these judges the personal power to hear these cases, and did not implicitly authorize them to delegate this power to a Jury. In Re Kaiser Steel Corp., 911 F.2d 380, 391 (10th Cir. 1990). Second, no present Bankruptcy Rule provides for jury trials.

*In Re Baker & Getty Financial Services, Inc.*, 954 F.2d 1169, 1173
(6th Cir. 1992); *Matter of Grabill Corp.*, 967 F.2d 1152, 1155 (7th
Cir. 1992). Formerly, the Bankruptcy Rules did provide a procedure
for jury trials, but the rule was repealed after the decision in
*Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50
(1982).[3] *Id.* Third, Congress intended the Bankruptcy Court to be a
specialized court to handle bankruptcy matters in an expedited and
efficient manner. *Baker & Getty*, 954 F.2d at 1173; *Grabill*, 967
F.2d at 1158. Congress did not set up this system intending these
courts to handle lengthy jury trials. *Id.* Fourth, "[j]urisdictional
statutes are to be construed 'with precision and with fidelity to

---

[3] In *Marathon*, the Supreme Court ruled that Congress had
overstepped Article III in its enactment of the Bankruptcy Act of
1978, 28 U.S.C. § 1471. The 1978 Act had made significant changes
in the substantive and procedural law of bankruptcy. It vested
the judges of the bankruptcy courts with all of the "powers of a
court of equity, law and admiralty." *Marathon*, 458 U.S. at 55. In
addition, the Act granted bankruptcy judges the power to hold
jury trials. *Id.*

In the plurality opinion, the Supreme Court, discussed the
important distinctions between Article III judgeships and the
bankruptcy judgeships established by the 1978 statute. The
Supreme Court noted that "Congress possesses broad discretion to
assign fact finding functions to an adjunct created to aid in the
adjudication of congressionally created statutory rights," but
that according non-Article III tribunals with "functions that
have been traditionally performed" by Article III courts leads to
"unwarranted encroachments upon the judicial power of the United
States." *Id.* at 81, 84. The plurality went on to state that the
Bankruptcy Act of 1978 "carries the possibility of such an
unwarranted encroachment." *Id.* at 84. Accordingly, the Supreme
Court concluded that the jurisdictional grant of the Bankruptcy
Act of 1978 "impermissibly removed most, if not all, of the
'essential attributes of the judicial power' from the Art. III
district court, and vested those attributes in a non-Art. III
adjunct." *Id.* at 87.

Case No. 06-1072(JAG)                                              20

the terms by which Congress has expressed its wishes.'" <u>Grabill</u>,
967 F.2d at 1154 (7th Cir. 1992), (quoting <u>Palmore v. United</u>
<u>States</u>, 411 U.S. 389, 3969 (1973). Fifth, "Congress legislated with
care in amending the Bankruptcy Act, and ... had it intended to
provide for jury trials in bankruptcy court, it would 'not [have]
left the matter to mere implication.'" <u>Grabill</u>, 967 F.2d at 1155.
(Citation omitted); <u>see also</u> <u>In re Dooley Plastic Co.</u>, 182 B.R. at
79.

     In this case, the  core issue is the extent of an exemption
claimed by Debtors over an asset of the estate and the authority of
the Trustee to administer it. This issue concerns a core proceeding
equitable  in  nature  because  it  relates  directly  to  the
administration of the estate. After reviewing prior precedent, this
Court agrees with the majority of decisions and concludes that
that there is a no right to trial by jury in bankruptcy core
proceedings. Thus, the Bankruptcy Court did not err in denying
Debtors a trial by jury.

                            **CONCLUSION**

     For the reasons stated above, the Court hereby **ADOPTS** the
Magistrate-Judge's Report and Recommendation, (Docket No. 34), in
its entirety.

     IT IS SO ORDERED.

     In San Juan, Puerto Rico, this 15th day of March, 2007.

Case No. 06-1072(JAG)                                    21


                                        S/Jay A. Garcia-Gregory
                                        JAY A. GARCIA-GREGORY
                                        United States District Judge